IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| KEBRINA CARTER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No.: 3:16cv429-WC ) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of Social Security,[1] | ) ) ) ) |
| Defendant. | ) ) |

# MEMORANDUM OPINION

**I.   INTRODUCTION**

Kebrina Carter ("Plaintiff") filed applications for a period of disability and disability insurance benefits and for supplemental security income on March 11, 2013, and March 17, 2013, respectively. Both applications alleged disability beginning on January 25, 2013. The applications were denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision, and the Appeals Council denied Plaintiff's request for review. The ALJ's decision consequently became the final decision

---

[1]  Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill shall be substituted for Acting Commissioner Carolyn W. Colvin as the Defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

of the Commissioner of Social Security ("Commissioner").[2] *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for review of that decision under 42 U.S.C. § 405(g). Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10). Based on the court's review of the record and the briefs of the parties, the court REVERSES the decision of the Commissioner.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3]

To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific

---

[2] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

>
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on a claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g., Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

[The court must] . . . scrutinize the record in its entirety to determine the

reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was thirty-six years old on the date of the hearing before the ALJ. Tr. 39. Plaintiff obtained her General Educational Development ("GED") certificate, and had completed some college coursework. Tr. 39. Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since January 25, 2013, the alleged onset date[.]" Tr. 17. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "obesity; asthma; and bronchitis." Tr. 17. At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" Tr. 19. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform light work . . . except that the claimant can sit at least two hours without interruption and a total of at least six hours over the course of an eight-hour workday. The claimant can stand and/or walk at least two hours without interruption and a total of at least six hours over the course of an eight-hour work day. The claimant can frequently use her lower extremities for pushing, pulling, and operating foot controls. The claimant can frequently use her upper extremities, for reaching overhead, pushing and pulling. The claimant cannot climb ladders, ropes, poles, or scaffolds. The claimant can occasionally climb ramps or stairs. The claimant can frequently balance and stoop. The claimant can occasionally kneel and crouch. The claimant cannot crawl. The claimant cannot work in humidity. The claimant can occasionally work in wetness and extreme temperatures. The claimant can rarely, up to one hour

5

> each, over the course of an eight-hour workday, work in dusts, gases, odors, and fumes. The claimant cannot work in poorly ventilated areas. The claimant cannot work at unprotected heights. The claimant can frequently work with operating hazardous machinery. The claimant can frequently operate motorized vehicles. The claimant can occasionally work while exposed to vibration.

Tr. 19. At Step Four, the ALJ concluded that Plaintiff "is capable of performing her past relevant work as a cashier[.]" Tr. 24. However, the ALJ alternatively concluded that, even if Plaintiff's RFC precluded her ability to perform past relevant work, "there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." Tr. 24. The ALJ noted the following representative occupations: "assemblers," "mail clerk non-postal," and "wire workers." Tr. 25. Accordingly, as an alternative Step Five finding, the ALJ determined that Plaintiff "has not been under a disability . . . from January 25, 2013, through the date of this decision[.]" Tr. 25.

## IV. PLAINTIFF'S ARGUMENT

Plaintiff presents one issue in her "Statement of the Issues," arguing that the ALJ's decision should be reversed because "the ALJ committed reversible error in failing to find that [Plaintiff's] medically severe impairments in combination met or medically equaled the severity of Listing 3.03(B)." Pl.'s Br. (Doc. 12) at 3.

## V. DISCUSSION

Plaintiff argues that her impairments meet or equal in severity Listing 3.03, the listing covering asthma. In essence, Plaintiff argues that the ALJ erred in failing to find that her asthma meets the severity of Listing 3.03B because the record indicates that she has endured the requisite number of attacks requiring physician interventions and, to the

6

extent the ALJ determined that the Listing was not met due to Plaintiff's noncompliance with a prescribed treatment regimen, the ALJ failed to adequately consider whether Plaintiff's purported noncompliance was due to her inability to pay for prescribed treatment. Pl.'s Br. (Doc. 12) at 7-9. In support, Plaintiff cites to medical evidence in the record showing that her "impairments caused her to receive physician intervention at East Alabama Medical Center ["EAMC"] on over twelve (12) occasions with two (2) of those times resulting in multi-day in-patient admissions." *Id.* at 7. In addition, Plaintiff cites to her own hearing testimony noting her inability to afford seeing an asthma specialist, and notations in the medical records reflecting Plaintiff's lack of insurance and inability to obtain certain treatments. *Id.* at 8.

> Listing 3.03B requires asthma with
>
> (A) Attacks (as defined in 3.00C), in spite of prescribed treatment and requiring physician intervention occurring at least once every 2 months or at least six times a year. Each in-patient hospitalization for longer than 24 hours counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks.

20 C.F.R. § 404, Subpt. P, App. 1. Section 3.00C defines "attacks" as "prolonged systematic episodes lasting one or more days and requiring intensive treatment, such as intravenous bronchodilator or antibiotic administration or prolonged inhalation bronchodilator therapy in a hospital, emergency room or equivalent setting." *Id*. § 3.00C. Thus, a claimant must show that his attacks were frequent enough – occurring every two months or at least six times per year within a twelve month period – and severe enough – requiring intensive treatment including intravenous bronchodilator or antibiotic

administration or prolonged inhalation bronchodilator therapy – to meet or equal the listing. *Id*. §§ 3.03B, 3.00C. Further, this threshold must be met in spite of the claimant's compliance with his prescribed treatment. *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) (refusal to follow prescribed medical treatment without a good reason will preclude a finding of disability). If the claimant does not meet the listing due to noncompliance, the Commissioner must show the claimant's noncompliance was unjustified. *Id.* at 1214 at n.* (11th Cir. 1988) (citing *Preston v. Heckler*, 769 F. 2d 988, 990-91 (4th Cir. 1985)); SSR 82-59, 1982 WL 31384 (Jan. 1, 1982) (where it is determined that a claimant fails to follow prescribed treatment, a determination must also be made as to whether failure to follow is justifiable). Specifically, the ALJ must develop a record establishing by substantial evidence that "had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored." *Id.* at 1213 (citing *Schnorr v. Bowen*, 816 F.2d 578, 582 (11th Cir. 1987); *Patterson v. Bowen*, 799 F.2d 1455, 1460 (11th Cir. 1986)). The ALJ must also consider reasons for a claimant's noncompliance, if any, and whether those reasons excuse noncompliance.[5] SSR 82-59.

---

[5] Social Security Ruling 82-59 states, in part:

> The claimant or beneficiary should be given an opportunity to fully express the specific reason(s) for not following the prescribed treatment. Detailed questioning may be needed to identify and clarify the essential factors of refusal. . . .
>
> The record must reflect as clearly and accurately as possible the claimant's . . . reasons for failing to follow the prescribed treatment.
>
> Individuals should be asked to describe whether they understand the nature of the treatment and the probable course of the medical condition (prognosis) with and without the treatment prescribed. . . . They should be made aware that the

8

The ALJ determined that Plaintiff's severe impairment of asthma did not meet or medically equal in severity Listing 3.03. In so finding, the ALJ noted that "[n]o treating or examining source has indicated findings that would satisfy the severity" of Listing 3.03. Tr. 19. Although recognizing that Plaintiff's "most severe impairment appears to be respiratory," the ALJ further found that Plaintiff "has repeatedly reported her only noncompliance. With compliance, the record simply does not suggest that any listing would be met or equaled, this is so even with consideration of her obesity and all other impairments collectively." Tr. 19.

While, admittedly, the ALJ summarized some of the medical evidence in the record, ultimately the court finds the ALJ's Step Three analysis lacking. Although the ALJ's opinion mentions several instances in which Plaintiff sought treatment in conjunction with the ALJ's discussion of Plaintiff's RFC, and even describes some of the treatments she received, *see* Tr. 20-22, the ALJ's opinion does not indicate whether any of these instances qualify as an "attack" for purposes of the Listing. In particular, the ALJ does not indicate whether he found either of the two instances in which Plaintiff was hospitalized for multiple days for treatment of her asthma—during which she was administered "scheduled albuterol nebulizer treatments as well as IV corticosteroids with Solu-Medrol" (Tr. 480) and monitored and treated with "high dose steroids, inhaled bronchodilators and

---

        information supplied will be used in deciding the disability claim and that, because of the requirements of the law, continued failure to follow prescribed treatment without good reason can result in denial or termination of benefits . . . .

9

antibiotics" (Tr. 675)—constitute "attacks" within the meaning of Listing 3.03.[6] In addition, several of the instances in which Plaintiff presented to EAMC for treatment—namely, her visits to EAMC on July 23, 2013, March 19, 2014, April 11, 2014, May 13, 2014, and May 23, 2014—are not discussed in any substantial way in the ALJ's opinion.

The ALJ's failure to fully embrace the analysis required by Listing 3.03 renders his opinion unclear as to exactly why he concluded that Plaintiff's asthma is not of listing-level severity. The ALJ first remarks that "[n]o treating or examining source has indicated findings that would satisfy the severity requirements of any listed impairment." Tr. 19. But, as set forth above, except to the extent that any "finding" might inform as to the course of treatment provided, Listing 3.03 does not turn on specific findings by a treating or examining source. Rather, Listing 3.03 is concerned with whether the claimant suffered "prolonged systematic episodes lasting one or more days and requiring intensive treatment[.]" There undoubtedly were "findings" that Plaintiff suffers from asthma, and, additionally, there were at least two instances in which Plaintiff was admitted to EAMC for multiple days of treatment of her condition. If the ALJ determined that these occasions nevertheless do not constitute "attacks" within the meaning of the Listing, or that, if they do, none of Plaintiff's other visits to EAMC may aggregate with them to push Plaintiff

---

[6]  Even Defendant appears to concede that the first of these occurrences, on October 16, 2013, may qualify as an "attack" under the Listing. *See* Def.'s Br. (Doc. 13) at 8.

across the threshold imposed by Listing 3.03, then the ALJ failed to clearly explain his reasoning for that conclusion.

In addition, the ALJ arguably concluded that Plaintiff's asthma does not meet Listing 3.03 because of her noncompliance. *See* Tr. 19. However, even here the ALJ's opinion is vague. Although acknowledging that Plaintiff's "most severe impairment appears to be respiratory," the ALJ confusingly states that "the claimant has repeatedly reported her only noncompliance." Tr. 19. The court construes this remark as essentially indicating the ALJ's belief that Plaintiff repeatedly has reported her own failure to comply with prescribed treatment, and that this failure caused the exacerbations for which Plaintiff sought physician intervention numerous times. However, the ALJ's own opinion does not support such a sweeping conclusion. It appears the ALJ only mentions one instance, in June of 2012, when Plaintiff "reported she had stopped taking her blood pressure medication because of severe headaches. She was also out of her Advair Diskus for her asthma." Tr. 21. The court fails to see how Plaintiff's failure to comply with her prescribed blood pressure treatment can have any bearing upon a purported failure to comply with prescribed asthma treatments or otherwise result in Plaintiff's repeated asthma exacerbations. Likewise, the court fails to see how Plaintiff merely being out of her Advair Diskus in June of 2012 could somehow constitute "repeated" noncompliance.

More importantly, the record actually indicates that, most of the times Plaintiff presented to EAMC for treatment of her asthma, she reported that she had complied with her prescribed treatment beforehand, but with little success in attaining relief. *See, e.g.,*

Tr. 337 ("She has been using her inhaler nebulizer without relief."); Tr. 447 ("She states she attempted to take an albuterol treatment at home with minimal relief."); Tr. 410 ("She has used her nebulizer treatment at home, she states 5 times over the course of the day."); Tr. 386 ("She has a nebulizer at home, but she continues to wheeze."); Tr. 638 ("She takes home albuterol and steroids inhalers."); Tr. 1000 ("She takes some home treatments, but still no relief."); Tr. 977 ("She uses an albuterol nebulizer on a q.i.d. basis and then has used a metered-dose-inhaler in-between when she gets into breathing difficulties. She reported increased use over the past 2 days . . . ."); and Tr. 962 ("She has been having asthma attacks since yesterday. She has been using nebulizers without relief."). In addition to the foregoing, at the hearing before the ALJ, Plaintiff testified her previous lack of health insurance, as well as her lack of money, affected her ability to see a specialist for her asthma. Tr. 51. Given this record, and given the ALJ's failure to more fully explain any conclusion that Plaintiff's asthma does not meet or equal Listing 3.03 due to her purported noncompliance, the court cannot conclude that any such conclusion by the ALJ is supported by substantial evidence.

In sum, after careful review of the ALJ's opinion and the record evidence in this case, the ALJ's basis for his conclusion that Plaintiff's asthma is not of listing-level severity is not clear to the court. If the ALJ determined that Plaintiff had an insufficient number of qualifying asthma "attacks," the ALJ's opinion does not reflect a proper analysis of the many physician interventions highlighted by Plaintiff to determine whether any of those interventions, or just an insufficient number of them, constitute asthma "attacks" within

12

the meaning of Listing 3.03. Likewise, if the ALJ determined that Plaintiff's asthma does not meet Listing 3.03 due to her noncompliance with prescribed treatment, the opinion fails to offer substantial evidence for that conclusion, especially considering the weight of the evidence demonstrating Plaintiff's numerous attempts to comply with prescribed treatment. Accordingly, the decision of the Commissioner is due to be reversed, and this matter is due to be remanded for further proceedings. On remand, the ALJ should clarify his analysis with respect to both whether Plaintiff endured the requisite number of qualifying asthma attacks under Listing 3.03 and, even if she did, whether she nevertheless fails to satisfy the Listing due to her failure to comply with prescribed treatment.

## VI. CONCLUSION

For all of the reasons given above, the undersigned Magistrate Judge concludes that the decision of the Commissioner is REVERSED and this matter is REMANDED to the Commissioner for further proceedings. A separate judgment will issue.

Done this 22nd day of June, 2017.

/s/ Wallace Capel, Jr.
CHIEF UNITED STATES MAGISTRATE JUDGE